**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| SYLVIA S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CV1074 |
| | ) | |
| FRANK J. BISIGNANO, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Sylvia S., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 4 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 7 (Plaintiff's Brief); Docket Entry 9 (Commissioner's Brief); Docket Entry 10 (Plaintiff's Reply)). For the reasons that follow, the Court should enter judgment for the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 229-44), alleging a disability onset date of May 23, 2017 (see Tr. 229, 231, 238, 240). Upon denial of that application initially (Tr. 90-100, 118-22) and on reconsideration (Tr. 101-13, 132-35), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (see Tr. 136-37). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 38-69.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 14-37.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 226-28), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] last met the insured status requirements of the . . . Act on December 31, 2019.
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of May 23, 2017, through her date last insured of December 31, 2019.
>
> . . .
>
> 3. Through the date last insured, [Plaintiff] had the following severe impairments: relapsing-remitting multiple sclerosis, attention deficit-hyperactivity disorder (ADHD), and learning disorder.
>
> . . .
>
> 4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met

or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . except [she] could stand and/or walk 6 hours of an 8-hour workday and sit 6 hours of an 8-hour workday; could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could frequently grip, grasp, handle, finger, and feel with the bilateral upper extremities; could frequently climb ramps/stairs; could occasionally climb ladders/ropes/scaffolds; could frequently balance and stoop; could occasionally kneel, crouch, and crawl; could never perform work in high, exposed places, in proximity to moving mechanical parts, and driving or operating machines or equipment; could perform simple, routine, repetitive tasks at a non-production assembly line rate; could have occasional interaction with coworkers and supervisors but never interact with the general public; could work in a low stress work environment with no more than occasional use of judgment and decision making capabilities; and could adapt to occasional changes in workplace settings and routines.

. . .

6. [Plaintiff] had no past relevant work during the period from her alleged onset date of May 23, 2017, through her date last insured of December 31, 2019.

. . .

10. Through the date last insured, considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [she] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined in the . . . Act, at any time from May 23, 2017, the

> alleged onset date, through December 31, 2019, the date last insured.

(Tr. 19-33 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B. Assignments of Error

Plaintiff argues that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[s]ubstantial evidence does not support the ALJ's evaluation of [the initial-level state agency psychological consultant's] opinion in formulating the RFC's determination of [Plaintiff]'s mental work-related limitations because the ALJ did not explain why a limitation to short instructions was excluded

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

from the RFC determination" (Docket Entry 7 at 7 (bold font and block formatting omitted); see also Docket Entry 10 at 2-8); and

2) "[s]ubstantial evidence does not support the ALJ's omission of a reaching limitation from the RFC determination because the evidence of record confirmed that [Plaintiff] had difficulty reaching due to poor balance and coordination issues" (Docket Entry 7 at 12 (bold font and block formatting omitted); see also Docket Entry 10 at 8-11).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 9 at 3-14.)

### 1. Short Instructions

Plaintiff's first assignment of error maintains that "[s]ubstantial evidence does not support the ALJ's evaluation of [the initial-level state agency psychological consultant's] opinion in formulating the RFC's determination of [Plaintiff]'s mental work-related limitations because the ALJ did not explain why a limitation to short instructions was excluded from the RFC determination." (Docket Entry 7 at 7 (bold font and block formatting omitted); see also Docket Entry 10 at 2-8.) More specifically, Plaintiff notes that, although the initial-level consultant "opined that [Plaintiff] could 'understand and remember short simple instructions but may have difficulty with detailed instructions'" (Docket Entry 7 at 7 (quoting Tr. 97) (emphasis added)), and the reconsideration-level consultant "opined that

[Plaintiff] could 'understand, remember, and follow simple instructions'" (id. (quoting Tr. 110) (emphasis added)), "[t]he ALJ found th[o]se opinions 'persuasive'" (id. at 8 (quoting Tr. 29)), "incorrectly stated that [the consultants'] opinions were generally the same[, ] did not discount th[e initial-level consultant's opinion that Plaintiff might have difficulty with detailed instructions, and] . . . did not explain why the RFC determination did not contain a limitation to short instructions" (id. (citing Tr. 29)). Plaintiff additionally contends that "[t]he ALJ's failure to properly evaluate [the initial-level consultant]'s opinion was prejudicial because[,] . . . [u]nder *Thomas* [*v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019)], a limitation to short instructions would have required [VE] testimony to address the apparent conflict between th[at] limitation and the [R]easoning [Development L]evel of two [('RDL 2')] required by the three occupations [cited by the VE and adopted by the ALJ at step five of the SEP]." (Id. at 10 (citing Tr. 32, 61-63); see also id. at 6 (quoting Thomas, 916 F.3d at 314, for proposition that "[RDL 2] requires an individual to 'carry out detailed but uninvolved instructions[,]'" and that "a claimant . . . limited 'to short, simple instructions, may not be able to carry out detailed but

uninvolved instructions'").)[5] For the reasons that follow, Plaintiff's assertions miss the mark.

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 229-44)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence, see Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or accord special deference to treating source opinions. See 20 C.F.R. § 404.1520c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources"). Instead, an ALJ must determine and "articulate in [the] . . . decision how persuasive [he or she] find[s] all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b) (emphasis added). Moreover, when a medical source provides more than one opinion, the ALJ can evaluate the

[5] A job's RDL reflects the degree of analytical ability required by the job, with the levels arranged in ascending order of complexity from level 1 to level 6. See generally Dictionary of Occupational Titles ("DOT"), App'x C ("Components of the Definition Trailer"), § III ("General Educational Development"), 1991 WL 688702 (G.P.O. 4th ed. rev. 1991). A job with RDL 1 entails the abilities to "[a]pply commonsense understanding to carry out simple one- or two-step instructions . . . [and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." Id. (emphasis added). In contrast, a position rated at RDL 2 requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions . . . [and d]eal with problems involving a few concrete variables in or from standardized situations." Id. (emphasis added).

persuasiveness of such opinions "together in a single analysis," and need not articulate how he or she considered those opinions "individually." 20 C.F.R. § 404.1520c(b)(1).

In evaluating the persuasiveness of an opinion, the SSA deems supportability and consistency "the most important factors," and, thus, the ALJ must address those two factors in evaluating the persuasiveness of an opinion. 20 C.F.R. § 404.1520c(b)(2).[6] The ALJ must discuss the three other persuasiveness factors — the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the opinion, 20 C.F.R. § 404.1520c(c)(3)-(5) — only when the ALJ finds two or more opinions about the same issue "[e]qually persuasive" in terms of supportability and consistency, 20 C.F.R. § 404.1520c(b)(3).

At the initial level of review, the state agency psychological consultant found that Plaintiff's mental impairments qualified as severe and caused "[m]oderate" limitations in her abilities to "[u]nderstand, remember, or apply information," "[i]nteract with others," "[c]oncentrate, persist, or maintain pace," and "[a]dapt or manage [her]self[.]" (Tr. 94 (emphasis added).) As a result of

[6] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(2).

those limitations, the consultant formulated a mental RFC in which she found Plaintiff had "[m]oderate[] limit[ation]" in her ability to understand, remember, and carry out detailed instructions, and opined that Plaintiff could "understand and remember short simple instructions but may have difficulty with detailed instructions" (Tr. 97 (emphasis added)), as well as that Plaintiff remained "capable of [simple, routine, repetitive tasks ('SRRTs')]" (Tr. 98 (emphasis added)). Upon reconsideration, another consultant similarly concluded that Plaintiff's mental impairments caused "[m]oderate" limitations in her abilities to "[u]nderstand, remember, or apply information," "[i]nteract with others," "[c]oncentrate, persist, or maintain pace," and "[a]dapt or manage [her]self" (Tr. 105 (emphasis added)) and also found, like the initial-level consultant (see Tr. 97), that Plaintiff had "[m]oderate[] limit[ation]" in her ability to understand, remember, and carry out detailed instructions (Tr. 110 (emphasis added)). That consultant, unlike the initial-level consultant, opined that Plaintiff could "understand, remember, and follow simple instructions" (Tr. 110 (emphasis added)), as well as "accept simple instructions from a supervisor" (Tr. 111 (emphasis added)), and ultimately concluded that Plaintiff remained capable of "perform[ing SRRTs] at a non-production pace, in a position with reduced social demands and no frequent changes in assigned tasks or

routines" (Tr. 106 (emphasis added); see also Tr. 111 (finding Plaintiff "[c]apable of SRRTs" (emphasis added))).

The ALJ provided the following analysis of the persuasiveness of the state agency psychological consultants' opinions:

> The [ALJ] has considered the prior [state agency] psychological consultant's findings through the date last insured at the initial level . . . . [The initial-level consultant] found [Plaintiff] had moderate limitations in all "B" criteria. [That consultant] assessed that [Plaintiff] was able to understand and remember short instructions but may have difficulty with detailed instructions; sustain attention and concentration for short periods, but may have difficulty maintaining concentration for extended periods of time; may have difficulty with social interaction but is able to interact with others in a setting that does not require intensive interpersonal demands; and may have problems with adapting to routine change as [Plaintiff] has problems with handling stress.
>
> At the reconsideration level, the [ALJ] considered the mental limitations offered by [the reconsideration-level state agency psychological consultant] . . . . [That consultant] found the same moderate limitations in all "B" criteria but provided a more detailed mental [RFC]. [That consultant] assessed that [Plaintiff] was able to understand, remember, and follow simple instructions; has some deficits in sustained concentration and pace but appears capable of sustaining sufficient attention to complete [SRRTs] for a 2-hour period at a non-production pace and complete a normal workweek; may have some social interaction limitations but can accept simple instructions from a supervisor and maintain adequate relationships with coworkers in a work setting with minimal social interaction and only casual public contact; and will have some difficulty adapting to changes in the workplace but should be able to adapt to changes associated with the performance of simple routine tasks and function adequately in a stable work assignment in a position that is not highly production oriented or socially demanding.

> The [ALJ] finds [the consultants'] assessments to be generally the same. They are persuasive for [Plaintiff]'s performing [SRRTs] at a non-production assembly line rate; having occasional interaction with coworkers and supervisors; working in a low stress work environment with no more than occasional use of judgment and decision making capabilities; and adapting to occasional changes in workplace settings and routines. However, the [ALJ] found [Plaintiff]'s testimony supported limiting her to never interacting with the general public. [The consultants'] assessments were internally consistent at the time of their reviews of the limited medical evidence and generally supported by the findings of the consultative physical [sic] examiner, [J.] Craig Hunt, Psy.D. . . . .

(Tr. 29 (emphasis added) (internal parenthetical citations omitted).) Plaintiff's arguments challenging that analysis by the ALJ fail for the following three reasons.

First, as a threshold matter, the ALJ did not err in finding the state agency psychological consultants' opinions "generally the same." (Tr. 29 (emphasis added).) As discussed above, the consultants found the same moderate limitations in the four areas of mental functioning at steps two and three of the SEP (compare Tr. 94, with Tr. 105), the same moderate limitation in understanding, remembering, and carrying out detailed instructions in the mental RFC (compare Tr. 97, with Tr. 110), and the same ultimate conclusion that Plaintiff remained capable of SRRTs (compare Tr. 98, with Tr. 106, 111). As the ALJ expressly acknowledged, the opinions differed in that the reconsideration-level consultant "provided a more detailed mental [RFC]." (Tr. 29.) Moreover, the ALJ's mental RFC accounted for the

reconsideration-consultant's "more detailed mental [RFC]" (id.) by containing restrictions to "a non-production assembly line rate[,]" "occasional interaction with coworkers and supervisors[,]" no "interact[ion] with the general public[,]" "a low stress work environment with no more than occasional use of judgment and decision making capabilities[,]" and "occasional changes in workplace settings and routines." (Tr. 26.)

Second, contrary to Plaintiff's assertions, the initial-level consultant neither limited Plaintiff to short instructions nor found her unable to handle detailed instructions. Regarding short instructions, the consultant stated only that Plaintiff "[wa]s able to understand and remember short and simple instructions" (Tr. 97), but did not opine that her mental impairments limited her to work involving no more than short instructions (see id.). Consistent with that interpretation, the initial-level consultant ultimately concluded that Plaintiff could perform SRRTs (see Tr. 98), which denotes a broader range of unskilled work than short, simple instructions, see Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019) (holding that no apparent conflict existed between RFC containing restriction to SRRTs and jobs rated at RDL 2); Thomas, 916 F.3d at 313-14 (finding apparent conflict between RFC limiting the plaintiff to short, simple instructions and RDL 2 jobs).

Correspondingly, the initial-level consultant's statement that Plaintiff "may have difficulty with detailed instructions" (Tr. 97

(emphasis added)) did not equate to an opinion that Plaintiff lacked the ability to handle such instructions, Turberville v. Colvin, No. 1:11CV262, 2014 WL 1671582, at *6 (M.D.N.C. Apr. 23, 2014) (unpublished) ("[The consultative psychological examiner]'s observation that [the p]laintiff would have 'difficulty' tolerating stress in the workplace does not equate to an opinion that [the p]laintiff reasonably could not do so."), recommendation adopted, slip op. (M.D.N.C. May 15, 2014) (Eagles, J.); Watkins v. Astrue, No. 1:09CV741, 2011 WL 2791267, at *4 (M.D.N.C. Jul. 14, 2011) (unpublished) (Sharp, M.J.) (noting that doctor's opinion that claimant would have "some difficulty" attending school did not equate to inability), recommendation adopted, slip op. (M.D.N.C. Sept. 26, 2011) (Eagles, J.). Moreover, by prefacing the opinion with the equivocal word "may" (Tr. 97), the consultant did not even provide a definitive opinion that Plaintiff would have difficulty with handling detailed instructions (see id.).

Additionally, that interpretation of the consultant's "may have difficulty" (Tr. 97) language harmonizes with the consultant's finding of "[m]oderate" (as opposed to "marked" or "extreme") limitation in Plaintiff's ability to understand, remember, or apply information (Tr. 94) and "[m]oderate limit[ation]" in her ability to handle detailed instructions (Tr. 97). The regulations define a "moderate" limitation as meaning mental "functioning in that area independently, appropriately, effectively, and on a sustained basis

is fair," 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00F.2.c. (emphasis added), and not that the individual possesses no useful ability to function in that area.

Third, because (as explained above) the ALJ did not err by omitting from the RFC a limitation to short instructions, and because Plaintiff's RFC restricting her to SRRTs (see Tr. 26) does not conflict with the three RDL 2 jobs cited by the VE (see Tr. 62-63 (citing Dictionary of Occupational Titles ("DOT"), No. 222.687-022 ("Routing Clerk"), 1991 WL 672133 (G.P.O. 4th ed. rev. 1991), DOT, No. 208.685-010 ("Collator Operator"), 1991 WL 671753, and DOT, No. 222.587-038 ("Router"), 1991 WL 672123)) and adopted by the ALJ at step five of the SEP (see Tr. 31-32), see Lawrence, 941 F.3d at 143, no apparent conflict existed that the ALJ failed to identify and resolve.[7]

Put simply, Plaintiff's first issue on review fails as a matter of law.

---

[7] As the undersigned has recommended a finding that the ALJ did not err in omitting a limitation to short instructions from the RFC, and binding precedent from the United States Court of Appeals for the Fourth Circuit holds that no apparent conflict existed between Plaintiff's RFC limiting her to SRRTs (see Tr. 26) and the RDL 2 jobs adopted by the ALJ at step five (see Tr. 31-32), see Lawrence, 941 F.3d at 143, the Court need not reach Plaintiff's argument that Social Security Ruling 24-3p, Titles II and XVI: Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determinations and Decisions, 2024 WL 5256890 (Dec. 6, 2024), did not "overrule [the] binding judicial precedent [in Pearson v. Colvin, 810 F.3d 204, 210 (4th Cir. 2015)]" (Docket Entry 7 at 11), which "found that the duty to address apparent conflicts was independently required by the . . . Act and the ALJ's duty to develop the record" (id. at 10-11).

## 2. Reaching Limitation

In Plaintiff's second and final issue on review, she contends that "[s]ubstantial evidence does not support the ALJ's omission of a reaching limitation from the RFC determination because the evidence of record confirmed that [Plaintiff] had difficulty reaching due to poor balance and coordination issues." (Docket Entry 7 at 12 (bold font and block formatting omitted); see also Docket Entry 10 at 8-11.) More specifically, Plaintiff faults the ALJ for "not properly evaluat[ing consultative medical examiner] Dr. [Diana] Marchese's opinion on reaching limitations due to poor balance" (Docket Entry 7 at 14 (citing Tr. 28) (referencing Tr. 379)), because the ALJ 1) "did not explain why the timing of Dr. Marchese's examination [approximately eight months after Plaintiff stated that her multiple sclerosis symptoms began] undermined [Dr. Marchese's] opinion" (id. (citing Tr. 28)), and 2) "rejected [the] reaching limitation due to the phrasing of the opinion" (id. (citing Tr. 28)) without "clarif[ying any] ambiguity" by "'engag[ing] in a simple § 404.1520b(b)(2) inquiry'" (id. at 15 (quoting Oakes v. Kijakazi, 70 F.4th 207, 214 (4th Cir. 2023))). In addition, Plaintiff challenges the ALJ's failure to "properly acknowledge and consider [Plaintiff]'s ability to reach based on abnormal cerebellar testing" (id.; see also id. at 15-16 (summarizing evidence reflecting Plaintiff's impaired coordination (citing Tr. 58, 60, 375, 379, 407, 409, 413, 418, 421, 426, 433))),

or "provide any reasoning or explanation of why th[o]se abnormalities did not support a reaching limitation" (id. at 16 (citing Tr. 26-31)). In Plaintiff's view, "[t]he consideration of a reaching limitation due to poor balance and coordination issues is not an academic exercise because the occupations relied on by the ALJ require frequent reaching." (Id. (citing Tr. 32, 62-63) (referencing DOT, No. 222.687-022 ("Routing Clerk"), 1991 WL 672133, DOT, No. 208.685-010 ("Collator Operator"), 1991 WL 671753, and DOT, No. 222.587-038 ("Router"), 1991 WL 672123).) As the discussion below makes clear, Plaintiff's contentions fall short.

Dr. Marchese conducted a consultative physical examination of Plaintiff on December 2, 2017 (see Tr. 371-81), at which Dr. Marchese noted that Plaintiff "primar[il]y complain[ed] of [multiple sclerosis]" causing "cognitive [symptoms], fatigue, [and] trouble walking, writing, standing[, and] sitting for extended periods[,]" with "symptoms first beg[inning] in April 2017" (Tr. 371). Dr. Marchese documented "grossly intact" cranial nerves (Tr. 375), "[r]educed finger to nose coordination and heel to shin bilaterally" (id.), a "[w]ide based gait with externally rotated feet" (id.), 5/5 strength except 4+/5 leg extension bilaterally (see id.), "diminished [sensation] across both palms" (Tr. 376), and intact deep tendon reflexes (see id.). Dr. Marchese further recorded that Plaintiff could "lift, carry and handle light objects[,]" "rise from a sitting position without assistance[,]"

"walk on heels and toes[,]" and "stand on one foot bilaterally with concentration[,]" but had "difficult[y]" with tandem walking. (Id.) Dr. Marchese additionally found full range of motion in all of Plaintiff's joints (see Tr. 377-78), that Plaintiff could "pinch, grasp and manipulate small and large objects without difficulty" (Tr. 378), that she could "complete her paperwork with her own pen" with "legible" handwriting (Tr. 379), and that she could "reach overhead" (id.). As a result of those findings, Dr. Marchese concluded that Plaintiff "would likely have difficulty with activities that require stooping, squatting or handling heavy objects that require a strong base[,]" and would have "[m]oderate" limitation in carrying and "[m]ild" limitation in reaching due to "[p]oor balance[.]" (Id.)

The ALJ discussed Dr. Marchese's findings (see Tr. 28), and then provided the following analysis of the persuasiveness of her opinions:

> The [ALJ] finds Dr. Marchese's opinion minimally persuasive, as the examination occurred roughly eight months after [Plaintiff] stated the multiple sclerosis symptoms began. In addition, Dr. Marchese did not provide specific functional limitations; rather, she used an undefined "likely." Dr. Marchese did indicate that [Plaintiff]'s reaching was mildly limited and carrying was moderately limited due to poor balance, but she did not describe what kind of reaching (e.g. overhead) or a weight range. However, the findings are informative for providing a baseline of [Plaintiff]'s alleged physical

impairments from her alleged onset date through the date last insured.

(Id. (emphasis added) (internal parenthetical citation omitted).) As the ALJ found Dr. Marchese's opinions "minimally persuasive" overall (id.), and her mild reaching limitation in particular not adequately described (see id.), the ALJ labored under no obligated to adopt Dr. Marchese's mild reaching limitation. Plaintiff, however, attacks both of those bases for discounting Dr. Marchese's opinions (see Docket Entry 7 at 14-15) but, ultimately, has not shown that the ALJ reversibly erred.

Plaintiff first challenges the ALJ's decision to discount Dr. Marchese's opinions as "minimally persuasive" because her "examination occurred roughly eight months after [Plaintiff] stated the multiple sclerosis symptoms began" (Tr. 28), pointing out that "[t]he ALJ did not explain why the timing of Dr. Marchese's examination undermined her opinion" (Docket Entry 7 at 14). Plaintiff's argument in that regard has merit, as the ALJ did not explain why the passage of eight months between the reported start of Plaintiff's multiple sclerosis symptoms and the examination diminished the persuasiveness of Dr. Marchese's opinions. (See Tr. 28.) Further compounding that lack of explanation, the ALJ later "f[ound] Dr. Hunt's opinions persuasive, as the examination occurred roughly seven months after [Plaintiff] stated the multiple sclerosis symptoms began during Dr. Marchese's examination (April

2017)." (Tr. 30 (emphasis added).) The ALJ's decision entirely lacks an explication of why the eight-month gap in time undermined Dr. Marchese's opinions while the seven-month gap in time bolstered Dr. Hunt's opinions. (See Tr. 28-30.) However, as explained in more detail below, that error by the ALJ remains harmless under the facts of this case. See Calhoun v. Commissioner of Soc. Sec., ___ F.4th ___, ___, 2026 WL 2602326, at *4 (4th Cir. 2026) ("[W]e will set aside the [Commissioner's] decision for error only where the error is harmful. An error is harmless when the court can confidently conclude that no reasonable ALJ, fully crediting the relevant evidence, could have reached a different result."); see generally Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result").

Plaintiff additionally faults the ALJ for "reject[ing Dr. Marchese's] reaching limitation due to the phrasing of the opinion[,]" contending that, "[e]ven if Dr. Marchese's opinion used ambiguous language, . . . it does not give the ALJ the ability outright to reject [the] reaching limitation[.]" (Docket Entry 7 at 14.) According to Plaintiff, "the Fourth Circuit has held, '[] when an administratively ordered consultative examiner's opinion contains what ought to be an easily clarified ambiguity on a key

issue, it logically follows that an ALJ **must** engage in a simple § 404.1520b(b)(2) inquiry.'" (Id. at 14-15 (quoting Oakes, 70 F.4th at 214) (emphasis supplied by Plaintiff).)

Under the governing regulations, when the ALJ finds "evidence in [a] case record [] insufficient or inconsistent," the ALJ "may need to take [] additional actions," including that the ALJ can "determine whether [a claimant qualifies as] disabled based on the evidence [the ALJ] ha[s]," or "may recontact [a claimant's] treating source." 20 C.F.R. § 404.1520b (emphasis added). Here, the ALJ did not find Dr. Marchese's report (or her reaching opinion in particular) "insufficient" or "inconsistent" (see Tr. 28) and, even if the ALJ had done so, the regulations vested the ALJ with substantial discretion regarding the steps to take to remedy the insufficiency or inconsistency, and did not compel the ALJ to recontact Dr. Marchese, see Billie C. v. O'Malley, No. 2:23CV4245, 2024 WL 2819734, at *18 (D.S.C. May 14, 2024) (unpublished) ("[A]n ALJ is only expected to seek additional evidence or clarification if the ALJ cannot reach a conclusion about whether the claimant is disabled based upon the evidence in the record. *See* 20 C.F.R. §§ 404.1520b . . . . [T]he ALJ was not required to further develop the record after rejecting the portion of [the state agency psychological consultants'] opinion concerning [the p]laintiff's potential absences as vague. Under [the ALJ's] appropriate discretion, [he] relied on the extensive evidence available in the

record — including [the p]laintiff's own statements regarding her functional limitations, the objective medical evidence, [her] activities of daily living, and the opinion evidence — to render a disability determination . . . ."), recommendation adopted sub nom. Carey v. Commissioner of Soc. Sec. Admin., 2024 WL 2817955 (D.S.C. May 31, 2024) (unpublished); Hughes v. Kijakazi, No. 5:21CV05, 2022 WL 3714627, at *11-12 (D.S.C. Aug. 29, 2022) (unpublished) ("The ALJ was not required to recontact [the] consultative examiner [whose opinions the ALJ had found vague] . . . to obtain additional information with respect to his opinion."); Cullen v. Kijakazi, No. 6:20CV4061, 2022 WL 92616, at *2 (D.S.C. Jan. 10, 2022) (unpublished) ("The applicable regulations now allow ALJs substantial discretion in deciding whether to recontact a treating physician for additional or clarifying information. [The p]laintiff has cited no authority under the applicable regulation . . . requiring an ALJ to recontact a medical source for clarification of an opinion." (emphasis added)); Rogers v. Saul, No. 4:19CV896, 2020 WL 4209064, at *10 (D.S.C. June 30, 2020) (unpublished) (rejecting the plaintiff's argument that the ALJ erred by finding consultative examiner's opinions "overly vague," but then not recontacting the consultative examiner "for an explanation," because 20 C.F.R. § 404.1520b contains no such requirement), recommendation adopted, 2020 WL 4207649 (D.S.C. July 22, 2020) (unpublished).

Moreover, Oakes does not provide a basis for remand. In that case, the Fourth Circuit noted that, "[d]espite [the plaintiff's] years-long struggle with [back and leg pain], [his] medical record is exceedingly sparse . . . [and t]he totality of record medical evidence relating to his condition includes two emergency room visits and one administratively ordered consultative examination[.]" Oakes, 70 F.4th at 210–11 (emphasis added). In the context of that "exceedingly sparse" record, see id. at 210, the court held that, "[t]o the extent that [the consultative examiner]'s justification for his ambulatory-device recommendation was ambiguous, the medical record is incomplete and the ALJ should have "take[n] additional actions" to seek clarification," id. at 213 (citing 20 C.F.R. § 404.1520b(b)).

Here, in contrast, the ALJ had a complete record consisting of Plaintiff's testimony (see Tr. 44-59) and statements on Disability Reports (see Tr. 266-72, 294-301, 305-19), a Third Party Function Report completed by Plaintiff's cousin (see Tr. 321-30), opinions from two state agency medical consultants and two state agency psychological consultants (see Tr. 91-100, 102-13), Dr. Hunt's consultative psychological examination which included a battery of psychological tests (see Tr. 361-68), a comprehensive neuropsychological evaluation conducted in 2007 after Plaintiff's multiple sclerosis diagnosis (see Tr. 493-514), Dr. Marchese's consultative medical examination (see Tr. 371-81), and a complete

record (see Tr. 41-42) of Plaintiff's treatment prior to, during, and after the relevant period in this case (see Tr. 382-492). Under such circumstances, Oakes does not compel remand for the ALJ to take further action with respect to Dr. Marchese's reaching opinion under Section 404.1520b(b)(2). See Coley v. Bisignano, No. 5:25CV589, 2026 WL 2628855, at *7-8 (E.D.N.C. Aug. 17, 2026) (unpublished) (rejecting the plaintiff's "argu[ment that] the ALJ could have easily 'fixed' the vagueness problem by seeking clarification of [the consultative medical examiner]'s opinion[,]" and "distinguish[ing] the [] case from *Oakes*, because [] there was a history of treatment with neurology and orthopedics that documented [the plaintiff]'s impairments and limitations"), recommendation adopted, 2026 WL 2628296 (E.D.N.C. Sept. 4, 2026) (unpublished); Jasper Y. v. Bisignano, No. 8:25CV1370, 2025 WL 4067036, at *7-9 (D.S.C. Dec. 30, 2025) (unpublished) (finding no merit to the plaintiff's contention that ALJ's statement that consultative medical examiner's opinion regarding standing and walking limitations did "not appear to be attributable to [the examiner]" but, rather, based on the plaintiff's subjective reports amounted to "uncertainty regarding [the examiner]'s opinions" and "obligated [the ALJ] to seek clarification" under Oakes, because "the record . . . [wa]s not 'extremely sparse,' as was the record in *Oakes*[,]" and "there was additional evidence in the record which the ALJ could and did evaluate to reach a decision"),

recommendation adopted sub nom. Youngblood v. Bisignano, 2026 WL 165170 (D.S.C. Jan. 20, 2026) (unpublished).

Furthermore, assuming, arguendo, that the ALJ erred in his evaluation of Dr. Marchese's opinions, any such error remains harmless under the circumstances of this case. See Calhoun, ___ F.4th at ___, 2026 WL 2602326, at *4 ("[W]e will set aside the [Commissioner's] decision for error only where the error is harmful. An error is harmless when the court can confidently conclude that no reasonable ALJ, fully crediting the relevant evidence, could have reached a different result."); see generally Fisher, 869 F.2d at 1057 (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). Even if the ALJ had fully credited Dr. Marchese's opinion that Plaintiff's physical impairments resulted in a mild limitation in reaching (see Tr. 379), Plaintiff fails to explain how adopting a mild reaching limitation would have compelled the ALJ to restrict Plaintiff to less than frequent reaching in the RFC (see Docket Entry 7 at 12-17; see also Docket Entry 10 at 8-11).

Indeed, courts have held that frequent limitations in the RFC adequately account for even moderate limitations in functional areas. See Rosalyn R. P. v. Bisignano, No. 1:25CV725, 2026 WL 1864019, at *6 (M.D.N.C. June 29, 2026) (unpublished) (holding that

the plaintiff "fail[ed] to explain why the ALJ's RFC, which limited [the p]laintiff to frequent, but not constant, operation of hand controls, pushing, pulling, and reaching, did not sufficiently account for a 'moderate' limitation in those activities" (emphasis added) (internal parenthetical citation omitted)); Angela P. v. Bisignano, No. 24CV827, 2025 WL 3706652, at *20 (D.D.C. Dec. 22, 2025) (unpublished) ("'[F]requently' is defined by SSA regulations to mean 'occurring from one-third to two-thirds of the time.' And restricting a claimant to exposure to the condition only one- to two-thirds of the time is an appreciable limitation — a reduction in exposure of 33% to 66% compared to a non-limited individual — which is sufficient to account for a 'fair' [i.e., moderate,] limitation." (emphasis added) (citation omitted)); Jennifer Lee W. v. Berryhill, No. 5:18CV64, 2019 WL 1243759, at *5 (N.D.N.Y. Mar. 18, 2019) (unpublished) ("[A] moderate limitation is not inconsistent with a finding that an individual can engage in frequent, but not constant activity." (emphasis added)); Wake v. Astrue, No. 2:11CV35, 2012 WL 6851168, at *4 (W.D.N.C. Dec. 4, 2012) (unpublished) ("[The p]laintiff has provided no legal authority or any legal argument as to why [a physician]'s finding that [the p]laintiff's ability to grip . . . and to finely manipulate objects on the left was moderately to severely impaired . . . is inconsistent with the ALJ's RFC that [the p]laintiff was limited to frequent handling and fingering with the

left hand." (emphasis added)), recommendation adopted, 2013 WL 145764 (W.D.N.C. Jan. 14, 2013) (unpublished). As all the jobs in question require frequent reaching, see DOT, No. 222.687-022 ("Routing Clerk"), 1991 WL 672133, DOT, No. 208.685-010 ("Collator Operator"), 1991 WL 671753, and DOT, No. 222.587-038 ("Router"), 1991 WL 672123, Plaintiff has not shown that any error committed by the ALJ in analyzing the persuasiveness of Dr. Marchese's mild reaching opinion prejudiced Plaintiff.

Plaintiff further asserts that "the ALJ did not properly acknowledge and consider [Plaintiff]'s ability to reach based on abnormal cerebellar testing." (Docket Entry 7 at 15.) In support of that assertion, Plaintiff points out that "[t]he finger-to-nose test (*i.e.*, where the individual reaches for a medical provider's finger with an outstretched arm and then touches their own nose with that arm) is used to evaluate cerebellar damage and dysmetria" (id. (citing https://my.clevelandclinic.org/health/symptoms/25232-dysmetria)), as well as that "[a]n individual with dysmetria 'can't accurately judge the distance between [her]self and the things [she's] trying to reach or walk toward,' and . . . 'may have difficulty controlling their movements and may undershoot or overshoot their target'" (id. (quoting https://my.clevelandclinic.org/health/symptoms/25232-dysmetria)). According to Plaintiff, her "finger-to-nose tests consistently documented cerebellar abnormalities" (id. (citing Tr. 375, 379, 407, 409, 413, 418, 421,

426, 433)), which Plaintiff deems "consistent with [her attorney]'s argument [at the hearing before the ALJ] about how th[at] evidence related to [Plaintiff]'s work-related abilities" (id. (citing Tr. 58, 60)). Plaintiff further notes that "the ALJ did not acknowledge or mention [Plaintiff's finger-to-nose] tests at Guilford Neurological Associates" (id. at 15-16 (citing Tr. 28, 407, 409, 413, 418, 421, 426, 433)), and "did not provide any reasoning or explanation of why th[o]se abnormalities did not support a reaching limitation" (id. (citing Tr. 26-31)).

Although the ALJ did note Plaintiff's "reduced finger-to-nose coordination and heel–to-shin bilaterally" documented by Dr. Marchese (see Tr. 28 (referencing Tr. 37)), Plaintiff correctly points out that the ALJ did not expressly discuss Plaintiff's finger-to-nose tests with Plaintiff's treating neurologist, Dr. Richard A. Sater at Guilford Neurological Associates (see Tr. 20-31). However, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.'" Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (quoting Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). Moreover, despite Dr. Sater's consistent findings of reduced finger-to-nose testing (see Tr. 407, 409, 413, 418, 421, 426, 433), he offered no opinion that Plaintiff's multiple sclerosis limited her ability to reach (see Tr. 398-436, 460-87).

Significantly, Plaintiff did not testify that her multiple sclerosis caused reaching limitations; rather, she stated that it caused difficulties with her processing speed (see Tr. 48, 54), balance (see Tr. 51), ability to kneel (see id.), memory (see Tr. 52), ability to hold and pick up items (see Tr. 59), ability to shuffle papers (see Tr. 64), and ability to type (see Tr. 65). Notably, she also testified that she inadequately performed her prior job stocking candy at a grocery store, not because she could not perform the reaching involved in stocking candy, but "because [her] knees d[id]n't like to do that." (Tr. 45 (emphasis added).) Moreover, to the extent that Plaintiff alleged balance issues, the ALJ (A) found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms not entirely consistent with the medical evidence and other evidence in the record" (Tr. 27 (emphasis added)), a finding unchallenged by Plaintiff (see Docket Entries 7, 10), and (B) limited Plaintiff to a maximum of 20 pounds of lifting and carrying, frequent (as opposed to constant) balancing and stooping, and no "work in high, exposed places, in proximity to moving mechanical parts, and driving or operating machines or equipment" (Tr. 26 (bold font omitted)) to account for Plaintiff's issues with balance (see Tr. 30).

Lastly, to the extent that Plaintiff contends that "[her attorney]'s argument [at the hearing before the ALJ] about how th[e

finger-to-nose] evidence related to [Plaintiff]'s work-related abilities" supported a reaching limitation (Docket Entry 7 at 15 (citing Tr. 58, 60)), such a contention misses the mark. Plaintiff's attorney argued that Plaintiff's "ability to walk [wa]s the major thing" as well as "carry items while trying to walk[.]" (Tr. 58 (emphasis added).) He then elaborated as follows:

> [Plaintiff] has to really, really concentrate to maintain her ability to squat down. And that could be detrimental to her performing a light job, especially any kind of job like a cashier. Sometimes they send you off. You're not just standing there all day. They send you off to do zoning or whatnot. And being able to put things on stock could be a major issue for her. Even like the picker/packer, the ability to walk as long as she would have to walk and put things, pick things off of areas would be very difficult for her. And then the occasional of climbing things that would be needed for a light job, and just carrying 20 pounds at a time, occasionally, would be very difficulty for her to achieve with the medical evidence in the file.

(Id. (emphasis added); see also Tr. 60 ("But when you go down through the file with the Guilford Neurology, they talk about the reduced finger to nose with [sic] which would be your coordination. And then they talk about just the gait, which is wide gait, which would limit [Plaintiff's] ability to actually walk for long distances, especially if something is on the ground with a wide gait. It'd be easier for her to trip, to fall, just to be able to coordinate with a wide gait, especially for [an] eight hour day, 40 hour workweek." (emphasis added)).) When read in context, counsel's argument clearly focused on Plaintiff's alleged inability

to handle the walking, carrying, climbing, and squatting involved in jobs like cashier and picker/packer, and counsel made no argument that Plaintiff could not tolerate reaching. (See id.)

In sum, Plaintiff's second and final assignment of error fails to demonstrate grounds for remand.

## III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

October 16, 2026